## Case No. 6,045.

### In re HARBAUGH et al.

[15 N. B. R. 246; 15 Alb. Law J. 194; 23 Int. Rev. Rec. 50; 24 Pittsb. Leg. J. 100.] [1]

District Court, W. D. Pennsylvania. Feb. 3, 1877.

#### BANKRUPTCY—GENERAL PARTNERS.

1. A creditor cannot compel partners, willing or unwilling, to petition for the adjudication of other persons, who are alleged to be their fellow-partners.

2. Nor can any man lawfully be called upon to show cause why he shall not go himself or put anybody else into voluntary bankruptcy.

In bankruptcy.

KETCHUM, District Judge. The petition of the Citizens' National Bank of Pittsburg, and rule to show cause why the bankrupts shall not amend their petition by including George W. Cass and the Cambria Iron Company, as general partners in their late firm, etc. On August 1, 1874, Springer Harbaugh, David Matthias, and Samuel T. Owens filed their petition in this court praying that they might be adjudicated bankrupt. They stated themselves as co-partners, carrying on business in the city of Pittsburg; that the members of said co-partnership were unable to pay all their debts in full; that they were willing to surrender all their estates and effects for the benefit of their creditors, and desired to obtain the benefit of the bankrupt act [of 1867 (14 Stat. 517)]. They also filed with the petition schedules of the debts and of the effects of the partnership; also schedules of their individual debts and effects, and verified the petition and schedules by their oaths, and on the same day they were adjudicated bankrupts. On September 4, 1874, at the first meeting of creditors, assignees were chosen, and on September 8, 1874, the effects of the bankrupts were conveyed to them. From time to time various orders were made and executed for the sale and other disposition of large amounts of valuable property. April 26, 1876, the petition of the Citizens' Bank of Pittsburg was filed. This petition alleged that George W. Cass and the Cambria Iron Company were general partners of the said Harbaugh, Matthias & Owens, and as such should be joined with them in bankruptcy, and prayed the court inter alia, to order and direct the said Springer Harbaugh, David Matthias, and Samuel T. Owens to amend their petition by including the said George W. Cass and the Cambria Iron Company as general partners of said firm of Harbaugh, Matthias & Owens; and the said Cass and the Cambria Iron Company to file their individual schedules in bankruptcy, on or before a day certain, or in default thereof, that the as-signees of such bankrupt firm shall file formal schedules in their respective names, unless on or before a day certain they show cause to the contrary. And on the same day a rule to show cause accordingly was granted upon the said bankrupts, and upon the said George W. Cass and the Cambria Iron Company, returnable May 26, 1876. On May 26, 1876, counsel appeared d. b. e. for George W. Cass and the Cambria Iron Company, and moved the court to dismiss the said petition and rule to show cause. The motion was argued at length on December 27, 1876. The proceedings in bankruptcy of Harbaugh, Matthias & Owens was purely and simply a voluntary proceeding under section 5014 of the revised act as amended by section 15 of the act of June 22, 1874 [18 Stat. 182]. They swear in their petition that they, as co-partners, were transacting business, and had carried on business, and that the members of said co-partnership owed debts and were unable to pay them, and were willing to surrender all their estate and effects, etc., as required by the act. It is clear that they meant to swear, and meant to be understood as swearing that the co-partnership was composed of them alone. They did not swear that they were some or a part of the co-partners, but that they were co-partners carrying on business, and the members of said co-partnership owing debts, were willing to surrender their estate, etc. If there were other partners who ought to have been joined, how were they to be joined in a voluntary proceeding? There are but two ways: either by their own act, or by the petitioning partners including them, and asking the court to include them in the adjudication. There is no other way. Inability to pay alone is the ground of voluntary bankruptcy alone. No creditor can either compel a debtor to go into voluntary bankruptcy, or compel a partner to petition for the adjudication of his fellows. Nor can any man lawfully be called upon to show cause why he shall not go himself or put anybody else into voluntary bankruptcy.

The rule in this case is a rule to show cause why certain partners already adjudicated bankrupt in a voluntary proceeding shall not open their petition and expand their oath, so as to include other persons as partners. Like any rule to show cause, it is compulsory. If cause be shown, the showing is compulsory. If no sufficient cause be shown, the rule must be made absolute, and that is a decree that they shall do whatever under the exigencies of the rule they have failed to show they should not do. And in this case it would be no less than that they should willingly or unwillingly include the other parties in their petition. The petition and oath being voluntary, and by law embodying and affirming a fixed and prescribed series of facts, this decree, of course, like any other, would be nugatory unless enforced by the court.

---

[1] [Reprinted from 15 N. B. R. 246, by permission. 15 Alb. Law J. 194, contains only a partial report.]

It is not a thing that may be treated as having been done, because it ought to have been done. This oath with its sanction and penalties, human and divine, cannot be presumed. It would indeed be a strange miscellany on the record of a court that it is decreed that certain persons shall, under penalty, voluntarily swear that certain persons were co-partners in a certain firm, and to all the facts that would make bankrupts. It is an attempt by a creditor to compel a partner to do with alleged co-partners what the creditor cannot do himself. No creditor can compel voluntary bankruptcy. The power of one or more partners to put the others into bankruptcy on the ground of the inability of the firm to pay their debts, or, in other words, into voluntary bankruptcy, arises out of the relation of the partners to each other. From the mutual principalship and agency of each to all the others springs the power, for certain purposes, and within certain limits, of controlling each other; the same power that enables one or any number less than all to make contracts and perform all acts within the scope of the partnership business, and, under certain conditions of pecuniary embarrassment or insolvency, to sell out the concern, or assign the effects for the benefit of creditors. The exercise of this power over each other in bankruptcy is held to be voluntary, and though it is actually compulsory as to the other partners, it is not involuntary in the sense of the bankrupt act, because the act of one is held to be the act of all, and if one partner, on account of the insolvency of the concern, petitions to put the firm into bankruptcy, whether the others assent or not, if they are unable to pay their debts, then the petition of one is held to be the petition of all, and they are all decreed voluntary bankrupts.

This petition and rule to show cause do not contemplate the voluntary acts of anybody, but to compel partners, willing or unwilling, to put other persons alleged to be partners into bankruptcy, and that too without even alleging the only ground upon which these partners could accomplish it. The petitioners do not even allege that if Cass and the Cambria Iron Company were joined, the firm then would be unable to pay its debts, and yet they desire to make the bankrupt partners swear, inter alia, to this. It is an attempt under the guise of voluntary bankruptcy to accomplish involuntary bankruptcy without the legal ground for either. If these bankrupts left out others who were partners, they committed a fraud upon the creditors. There was a remedy for that, and but one remedy. At any time up to the first meeting of creditors, and perhaps at any time until the effects of the firm had become so fixed that the estate could not be put into status quo, the court, on showing of the facts, would have an-nulled the adjudication, when all that were liable could have been proceeded against at law, or forced into bankruptcy if subject to it. But the petitioners have been far from this; while they allege that they gave the credit of their debts to the firm on the understanding and belief that the parties sought to be included were partners, they have from the day of the adjudication done nothing to annul the proceedings. But on April 26, 1876, alleging the proceedings to be irregular, they come and ask to cure them by a proceeding still more irregular. It cannot be granted. The petition and all proceedings under it are dismissed at the cost of the petitioners.

[A bill of review of these proceedings was dismissed by the circuit court in Case No. 2,732.]